

Marc Marmaro, Manatt, Phelps, Rothenberg & Tunney, Los Angeles, Cal., for plaintiff.

Neither the defendant nor his counsel appeared.

### In re Willie BROWN, Debtor.

### Bankruptcy No. 80–09359–RO.

United States Bankruptcy Court,
C. D. California.

Oct. 1, 1980.

ORDER ON EX PARTE APPLICATION TO VACATE STAY AND PERMIT FORECLOSURE SALES, WITHOUT NOTICE

ROBERT L. ORDIN, Bankruptcy Judge.

On Thursday, September 25, 1980, Pacific Thrift and Loan (hereafter "Pacific"), sought an Ex Parte Order, without notice:

  (i) vacating the automatic stay;

  (ii) permitting Pacific to enforce its security interests in the debtor's real property by foreclosure sale; and

  (iii) permitting Pacific to take such other action as is necessary to enforce its lien rights against debtor's real property.

---

3.  *See In re Blier Cedar Company, Inc.*, 28 UCC Rep. 1202 (D.Me.1980).

4.  11 M.R.S.A. § 9–402(8).

Documents filed by Pacific in support of this request for relief, and the files and records of the Bankruptcy Court referred to in Pacific's moving papers reflect the following:

1. On August 29, 1979, Pacific made a series of loans aggregating $89,540.00 to Grady and Barbara Mason. Four Promissory Notes, dated August 29, 1979, were executed by the Masons aggregating said sum. Each of said Promissory Notes was secured by a separate Trust Deed, dated August 29, 1979, on four separate parcels of real property. The Deeds of Trust were recorded September 7, 1979.

2. At the time these loans were made and the Promissory Notes and Trust Deeds were executed, there were prior liens of record on three of the four parcels, securing an aggregate indebtedness in excess of $67,000.00.

3. On February 22, 1980, Pacific's Promissory Notes were in default, and Pacific caused Notice of Default and Election to Sell to be recorded wherein Pacific asserted that the unpaid amount due to Pacific on account of principal, interest, and other charges, was in excess of $131,000.00.

4. Pursuant to this foreclosure effort by Pacific, sales were set for June 26, 1980, with respect to the four real property parcels.

5. On June 23, 1980, the Masons executed a Grant Deed to Robyn D. Grant.

6. On June 26, 1980, and prior to the time fixed for the sales, the following occurred:

   (i) the Grant Deed to Robyn D. Grant was recorded at 8:41 A.M.; and

   (ii) at 9:16 A.M. Grant filed a Chapter 13 petition. Counsel for record for Grant was W. Andrew Hudson. The petition consisted of only a "face sheet" or first page, and did not contain any Chapter 13 statement, or supporting documents which are the equivalent of schedules and statements of affairs in Chapter 13.

7. On July 3, 1980, Pacific filed a complaint seeking relief from the automatic stay in the Grant Chapter 13 case. The complaint was served as required by law on Grant and was also served on counsel Hudson and on the Chapter 13 standing trustee Elsie Davis. Thereafter on July 9, 1980, Grant substituted Hudson out as counsel, and continued in pro per.

8. Grant filed no responsive pleading in response to Pacific's complaint to vacate the stay, nor did Grant appear at the time set for trial. Judgment was entered August 18, 1980, vacating the stay and permitting Pacific to foreclose on the real property described in the Deeds of Trust. Notice of Judgment was served on Grant, August 18, 1980.

9. Pacific again set the foreclosure sales, this time for September 24, 1980.

10. On September 8, 1980, Grant executed Grant Deeds to Willie Brown with respect to each of the four parcels of real property subject to Pacific's Deeds of Trust.

11. On September 15, 1980, seven days after these Grant Deeds were executed and notarized, Brown filed a Chapter 13 proceeding. It was a "face sheet" only filing, unsupported by schedules or statements of affairs. Ten days later, on September 24, 1980, the Deeds were recorded. Again, the sequence: September 8, 1980, the Deeds in favor of Brown, were executed and notarized; September 15, 1980, Brown filed a Chapter 13 in pro per; and September 24, 1980, the Deeds were recorded.

12. Pacific's efforts to foreclose are presently stayed by reason of the automatic stay resulting from the Chapter 13 proceeding instituted by Brown.[1]

13. The aggregate amount of delinquent principal, interest and other charges due to Pacific at the present time is approximately $150,000.00. The total due to Pacific *and* the prior lienors of record is approximately $219,000.00.

---

1. See § 1306, providing that property acquired by the debtor after the commencement of the case is included as "property of the estate".

14. The value of the four parcels of property at the present time is not in excess of $196,000.00, according to Pacific. Accordingly Brown has no equity in the properties at this time.

15. No payment has ever been made to Pacific on account of any of these four loans.

Pacific contends (i) that Mason, Grant, and Brown have pursued a course of conduct intended to hinder, delay and defraud Pacific in the enforcement of its lawful property rights; and (ii) that Grant and Brown have fraudulently invoked the jurisdiction of the Bankruptcy Court in furtherance of this design to hinder, delay and defraud Pacific; and (iii) that the demonstrated propensities of Mason, Grant and Brown, and those acting in concert with them, if any, are to use the bankruptcy statute to accomplish a fraudulent purpose: to wit, to hinder, delay and defraud creditors; and (iv) that any "notice" to Brown of the imminence of legal consequences, (such as a hearing on Pacific's request for relief from the stay) will trigger a new transfer or other act to obstruct and frustrate Pacific in the enforcement of its legal rights; and (v) that if Pacific is prevented from vacating the automatic stay and foreclosing on the property by continued acts and conduct similar to that engaged in by Mason, Grant and Brown in the past, Pacific will be irreparably injured.[2]

Pacific also asserts that unless the Bankruptcy Court is "impotent" to deal with such conduct, the court must fashion relief which takes into account the tactics, design and objectives of Brown and the others and effectively affords Pacific a realistic remedy to protect and enforce its legal rights. Pacific justifies its request that the stay be vacated and the foreclosure sale held without notice, by asserting that any notice to Brown will trigger another transfer or conveyance and necessitate the institution of other adversary proceedings, ad infinitum.

These contentions and assertions of Pacific are fully supported by the record. Mason, Grant and Brown, and the individuals acting in concert with them, if any, have clearly pursued a course of conduct intended to hinder, delay and defraud Pacific in the enforcement of its property rights and interests. It is likewise clear that Grant and Brown have invoked the jurisdiction of the Bankruptcy Court by instituting Chapter 13 proceedings for the purpose of accomplishing a result neither contemplated by the statute nor within the aim, purport or objectives of the Congress in adopting Chapter 13. [Senate Report No. 95–989, pp. 14–15 and House Report No. 95–595, pp. 295–298, U.S.Code Cong. & Admin.News 1978, p. 5787]. The pattern of filing a "face sheet" only, never supported by schedules or statements of affairs, never appearing in response to legal process, and creating transfers on the eve of foreclosure sale, fully justifies the concerns, apprehensions and alarms expressed by Pacific. The record amply supports Pacific's concern that any "notice" which alerts Brown or the others to the prospect of immediate legal proceedings to protect Pacific's rights, will be followed in short order by other conduct designed to postpone the day of reckoning and create new obstacles to the enforcement by the creditor of its legal rights. Under these circumstances, it is apparent that a temporary restraining order against future transfers would be a useless and meaningless procedure, and would not accomplish the maintenance of status quo pending a court hearing.

On the other hand, whatever rights or interests Brown and the others may have or assert in the property, whether possessory or in fee, are entitled to be litigated and adjudicated in an appropriate hearing after fair notice and an opportunity to appear and express and present their views. While Pacific may, and with some justification, assert that Brown and the others have cho-

---

2. The validity and effect of a post filing transfer may be seriously questioned, (see § 549); however, the fact of the transfer and the subsequent filing of a Chapter 13 case by the trans-feree creates sufficient cloud on rights of the secured creditor to effectively impede its ability to foreclose.

sen to act secretly, covertly, and outside the judicial system, the laws protecting property rights and interests of those situated in the position of Brown and the others are of ancient origin, and thoroughly embedded in our legal system. In this context, the court's task is to protect Pacific in the enforcement of its legal rights and at the same time ensure Brown and the others of a fair opportunity to vindicate and litigate their legal positions. The powers of the Bankruptcy Court under the Code are ample to perform this task. [28 U.S.C. § 1481, 11 U.S.C. § 105(a)].

Accordingly, the court orders as follows:

1. The stay against enforcement by Pacific of its rights in and to the collateral described in the Deeds and Trusts hereinabove set forth, is hereby vacated and set aside, and Pacific is expressly granted the right to proceed with the scheduling and conduct of its foreclosure sales without notice.

2. Pacific is further authorized to cause to be recorded, in accordance with non-bankruptcy law, the results and consequences of such foreclosure sales, including the recording of such deeds or other instruments as are appropriate to memorialize the result of the sales.

3. Within 24 hours after such recordation, Pacific is ordered to serve this Order on the following:

(a) Grady Mason;

(b) Robyn D. Grant;

(c) Willie Brown;

(d) W. Andrew Hudson; and

(e) all persons in possession of any of said parcels of real property or who are known by Pacific to assert any possessory or other interest in said property.

4. To cause to be prepared and served on each of the foregoing, together with a copy of this Order, a Notice of a hearing to be held before the undersigned on the third court day following such recordation. Each of said interests will be given an opportunity at that hearing to show cause why this Order vacating the automatic stay and permitting said foreclosure sales without notice should be vacated and set aside, and such other orders made as are appropriate to protect the respective rights, interests and property rights of Pacific and the others. Said notice will expressly direct that each party appearing at that hearing be prepared to establish the derivation and origin of any right, title or interest in said real estate which they or any of them presently assert.

5. Pending said hearing and effective on the date of service of this Order, each of Mason, Grant and Brown, is enjoined and restrained from making or suffering any further transfer of any kind, sort, nature or character whatsoever of any interest that any of them presently own or assert in said property.